## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| JAMES PIERCE, | : | |
| Petitioner, | : | Case No. 3:10cv00132 |
| vs. | : | District Judge Thomas M. Rose |
|  |  | Magistrate Judge Sharon L. Ovington |
| WARDEN, Ross County | : | |
| Correctional Institution, | | |
|  | : | |
| Respondent. | | |
|  | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Petitioner James Pierce brings this habeas corpus case under 28 U.S.C. §2254 challenging his state criminal convictions. He is presently incarcerated in state custody, serving a total sentence of 51 years to life. His lengthy sentence resulted mainly from a jury's determination that he committed aggravated murder, two counts of kidnapping, two counts of aggravated robbery, two counts of felonious assault, and aggravated burglary.

This case is before the Court upon Pierce's Petition for Writ of Habeas Corpus (Doc. #1), Respondent's Motion to Dismiss as Time Barred (Doc. #11), Pierce's Traverse (Doc. #13), and the record as a whole. Pierce asserts, in part, that he is actually innocent "in that he

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

was not involved with this crime in any manner."  (Doc. #1, PageID at 13).

II.    **Background**

    A.    **Convictions, Motion for New Trial, and Direct Appeal**

Pierce's trial in state court concerned the events leading to the aggravated murder of 25-year-old Jason Knipp.  *See, e.g,* Doc. #11, Exhibit 39, PageID at 233.  On or about February 7, 2006, a jury found Pierce guilty of murdering Knipp (and the other offenses previously noted).  (Doc. #1, PageID 1; Doc. #11, Exh. 30 and Exh. 39, PageID at 233).

On February 22, 2006, Pierce, through his trial counsel, filed a motion for new trial, asserting the existence of newly discovered evidence.  (Doc. #11, Exh. 27).

On February 28, 2006, while Pierce's motion for new trial was pending, the trial judge sentenced him (51 years to life) and issued a Termination Entry.  *Id*., Exh. 30.

Briefing continued on Pierce's motion for a new trial through March 2006.  On April 5, 2006, the trial judge denied Pierce's motion for new trial.  *Id*., Exh. 29.

Pierce's trial counsel soon filed – on April 11, 2006 – a notice of appeal "from the Entries entered in this action on February 28, 2006 and April 5, 2006."  *Id*., Exh. 31.  The prosecution responded with a motion to dismiss, arguing that Pierce's notice of appeal of his convictions and sentence – documented in the February 28, 2006 Termination Entry – was untimely because it had not been filed within 30 days of February 28, 2006.  *Id*., Exh. 32.

At this point Pierce obtained new appellate counsel, Byron Shaw, who filed a Memorandum in Opposition.  Attorney Shaw argued that Pierce's notice of appeal was timely

because under Ohio procedural rules, the 30-day time period for filing a notice of appeal did not begin to run for Pierce until the trial judge issued his decision (on April 5, 2006) denying Pierce's motion for new trial. (Doc. #11, Exh. 33).

On May 30, 2006, the Ohio Court of Appeals agreed with the prosecution, concluding, in part:

> The time for filing a timely notice of appeal from the February 28, 2006 termination entry began to run immediately because the motion for new trial was not filed within fourteen days of the verdict. Appellant's notice of appeal[,] filed on April 11, 2006, was untimely filed from the February 28, 2006 termination entry.

(Doc. #11, Exh. 34, PageID at 206). In this manner, the Ohio Court of Appeals rejected as untimely Pierce's direct appeal of his convictions.

Attorney Shaw filed a notice of appeal in the Ohio Supreme Court challenging "as of right" the Ohio Court of Appeals' decision denying Pierce "the right to appeal the February 28, 2006 termination entry...." *Id*., Exh. 41, PageID at 271.

On October 4, 2006, the Ohio Supreme Court issued an Entry dismissing Pierce's appeal thus denying further review of the trial court's February 28, 2006 Termination Entry. *Id*., Exh. 42. This ended Pierce's attempt to directly appeal his convictions in the Ohio courts.

## B. Pierce's Appeal Concerning His Motion For New Trial

Meanwhile, Pierce's appeal was still alive as to the denial of his motion for new trial. This was because the Ohio Court of Appeals' decision on May 30, 2006 also found that Pierce's had timely filed a notice of appeal concerning the trial judge's denial of his motion

for new trial. (Doc. #11, Exh. 34, PageID at 206).

In support of Pierce's challenge to the trial judge's denial of his motion for new trial, attorney Shaw filed a brief in the Ohio Court of Appeals, arguing:

I.     Defendant is entitled to a new trial pursuant to [Ohio Revised Code §§] 2945.79 - .831 because the trial court erred in convicting and sentencing defendant for murder, robbery, and kidnapping based on the rejection by the court of newly discovered evidence as a matter of law.

II.    Defendant's conviction was against the manifest weight of the evidence.

(Doc. #11, Exh. 35).

* * *

Turning to the factual background of Pierce's convictions, the Ohio Court of Appeals' decision on Pierce's untimely direct appeal did not make any factual findings concerning the evidence against Pierce at trial. Consequently, the presumption of correctness set forth in 28 U.S.C. §2254(e)(1) does not attach to the Ohio Court of Appeals' decision on Pierce's direct appeal.

The state court record in this case begins to shed light on the factual underpinnings of Pierce's convictions in the briefs the parties filed in state court concerning Pierce's motion for new trial. It is worth exploring their respective factual descriptions to fully understand the Ohio Court of Appeals' decision – to be described momentarily – rejecting Pierce's motion for new trial.

Pierce's Statement of Facts in his brief before the Ohio Court of Appeals, submitted by attorney Shaw, explained in part:

4

> During the trial, various defense witnesses provided testimony that James Pierce was not even there at the time the murder, robbery, kidnapping, etc. allegedly took place at a local garage and/or residence. According to [victim] Marie Cunningham, ... she did not see James Pierce there ... nor did she see James Pierce's Gold Tauras there either. Also, Kristen Bruns testified that she did not see James Pierce's car there either after shots were fired but saw a car similar to a Cavalier there along with a dark-skinned, black man with an Afro. However, James Pierce is a light-skinned, black male, with a close-shaved haircut.

(Doc. #11, Exh. 35, PageID at 210)(internal citations to trial record omitted).

The prosecution responded with its description of the evidence presented against Pierce at trial. The prosecution explained that one witness – Aaron Bass – testified that "days before the murder, he and Pierce devised a plan to rob [a] big-time drug dealer ... for money and drugs." (Doc. #11, Exh. 39, PageID at 234). Although Knipp was not the big-time drug dealer, Pierce and Bass thought they could forcibly obtain a large amount of drugs from Knipp, who they thought was an associate of the drug dealer. *Id*. The prosecution further explained that Pierce and Bass (and one additional person) kidnapped Jason Knipp and a friend of his. During the ensuing ordeal, according to Bass, Pierce killed Jason (fortunately, his friend survived). Bass testified during Pierce's trial:

> Pierce opened the back door of the car and yanked Jason out. At that time, Bass heard a loud scuffle. He glanced over and saw that Pierce had wrapped a belt around Jason's neck and was choking hin. Jason managed to get free from Pierce and tried to escape through the small opening between the garage door and the ground. Bass watched from the driver's seat of the Grand Am as Pierce fired his .357 Magnum handgun at Jason five or six times. Jason was about to make it underneath the garage door when Pierce grabbed him, pulled him back, and shot him one last time in the face area. Jason dropped to the ground.

(Doc. #11, Exh. 39, PageID at 241)(internal citations to trial record omitted).

5

On April 13, 2007, the Ohio Court of Appeals affirmed the trial judge's denial of

Pierce's motion for a new trial, reasoning:

> With respect to the motion for new trial, the only "newly discovered" evidence that Pierce brought before the trial court was the suspect testimony of another inmate [Miller] at the Montgomery County Jail who allegedly saw a "dark-skinned black man with an afro" hair style at the scene of the murder who could have been the real perpetrator.  Pierce contends that Miller's description of the unknown African-American male matches the description provided by the defense witness Kristen Bruns, who testified at trial that she observed the same male at the scene of the shooting.  Pierce asserts that Miller's testimony would "have given more credence" to the misidentification theory advanced by the defense at trial, thereby leading to Pierce's acquittal.

> After a thorough review of the record and the arguments advanced by both parties, we hold that the trial court did not abuse its discretion when it overruled Pierce's motion for a new trial.  Even if Miller's testimony were to be believed, it would be merely cumulative of the testimony offered by Kristen Bruns.  The fact that Miller would allegedly corroborate Bruns['] testimony that she saw a dark-skinned African-American male with an afro hair style outside the garage where the victim was murdered does not negate the bulk of the eyewitness testimony from the State's witnesses which placed Pierce at the crime scene and identified him as the shooter.  Simply put, Miller's testimony does not exonerate Pierce.  Rather, it merely identifies an African-American male at the scene of the crime whose description does not match that of Pierce. Just as the trial court found, such evidence would not establish "a strong probability that it will change the result if a new trial is granted."

(Doc. #11, Exh. 40, PageID at 267-68).

The state-court record provided by Respondent in the instant case (Doc. #11) does not

indicate that Pierce sought review of the Ohio Court of Appeals' decision in the Ohio

Supreme Court.  It instead indicates that Pierce took no further action in the Ohio courts for

nearly two years.

C.      **Attorney Bennett and Pierce's**
        **Pro Se Motion for Delayed Appeal**

At some point before January 11, 2007, Pierce obtained a new attorney, Clyde Bennett, II, to represent him in the Ohio courts.  On January 11, 2007 – several months before the Ohio Court of Appeals rejected Pierce's motion for new trial – attorney Bennett wrote a letter to Pierce, describing, in part, steps he might take to raise a claim of ineffective assistance of appellate counsel in the Ohio courts.  Pierce has attached a copy of this letter in the present case.  (Doc. #13, PageID, Exh. 2).

In the letter, attorney Bennett explained to Pierce that his direct appeal had been dismissed as untimely by the Ohio Court of Appeals and the Ohio Supreme Court had dismissed Pierce's further appeal.  Attorney Bennett also explained to Pierce that his appeal of the trial court's decision denying his motion for new trial was still pending.  Attorney Bennett then suggested the following:

> There may be a claim for ineffective assistance of counsel based upon the trial counsel's failure to timely file the notice of appeal.  However, I am not sure of the proper motion in which to raise this issue.  I suspect that it may be a delayed motion for reconsideration or a motion to re-open to the Court of Appeals or to the Ohio Supreme Court, but I would have to do further research regarding the proper procedure to confirm.  If this were to be granted, then I think we could move forward with your direct appeal.  However, I cannot tell from reviewing the pleadings and documents alone whether meritorious grounds exist for your direct appeal of your conviction or sentence.  Of course, such grounds would include the possible ineffective assistance of counsel claim or rulings on the various motions to suppress and other motions that were filed.  I will review the transcripts to determine this.

(Doc. #13, Exh. 2, PageID at 644).  Attorney Bennett then noted, "it will take a substantial amount of time to thoroughly review all of the pleadings and more importantly the transcripts

7

to assess the grounds for an appeal. I am currently doing the same. Additionally, I will be

meeting with you in the near future to discuss the concerns that you have." *Id*. The meeting,

however, was not to be. Pierce explains that the January 11, 2007 letter was the last contact

attorney Bennett had with him.

> Pierce states in the present case:

> > [I] had no idea Attorney Clyde Bennett had legal issues and would ultimately end up going to prison. Clyde Bennett continued to contact [me] periodically, although it took over a year before [I] found out that he may be in legal trouble.

> > Petitioner and family did everything they could to retrieve discovery and legal documents back from Clyde Bennett's law office, but w[ere] unsuccessful. It was an extremely stressful time though [I] worked diligently to put the pieces together and learn as much as I could to file a Federal Habeas Petition Pro Se. [I] filed a Federal delayed appeal due [to] the extraordinary circumstance of appeal attorney going to prison....

(Doc. #13, PageID at 634-35).

> Pierce has attached to his traverse copies of documents concerning a grievance

proceeding against attorney Bennett in the Ohio Supreme Court. One document indicates that

the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline

recommended that attorney Bennett be "suspended from the practice of law for a period of

one year with credit for time served under the interim suspension which began February 15,

2008." (Doc. #13, Exh. 3, PageID at 647).

> In his Traverse, Pierce does not identify the exact date when he first learned about

attorney Bennett's legal troubles. The most that can be determined based on the present

record in this case is that Pierce learned about attorney Bennett's legal troubles sometime

after his January 11, 2007 letter and before March 12, 2009, when Pierce filed his pro se

Motion for Leave to Filed Delayed Appeal in the Ohio Court of Appeals. The pro se motion

reveals that Pierce had decided to proceed pro se with his claims of ineffective assistance of

trial and appellate counsel and further indicates that he had essentially given up on attorney

Bennett due to Bennett's legal troubles. (Doc. #11, Exh. 44).

On March 12, 2009, Pierce also filed a pro se Notice of Delayed Appeal explaining

that he sought to bring a delayed appeal of "the judgment of conviction entered in this action

on February 7, 2006" – the date the jury reached its verdict. (Doc. #11, Exh. 43).

In response, the prosecutor filed a motion to dismiss, contending that Pierce's reasons

for not filing a timely appeal "are wholly insufficient to justify a delayed appeal." *Id*., Exh.

45, PageID at 282.

Pierce responded:

> The Appellant did hire and tell Attorney Clyde Bennett to file his
> delayed appeal. Mr. Bennett did contract to represent Appellant <u>before</u> the
> appeal time expiration date for filing a delayed appeal. The ineffectiveness of
> counsel not to file the appeal within the time guidelines severely prejudiced the
> Appellant and caused him not to have his appeal....

(Doc. #11, Exh. 46, PageID at 288)(emphasis in original). Pierce also explained that he had

asked his former appellate counsel, Byron Shaw, to file an appeal, but attorney Shaw did not

respond to Pierce's communications and "filed an appeal ... without <u>once</u> communicating with

[Pierce] in any way." *Id*. (emphasis in original). Pierce further argued, "To this day, [his]

right to a proper NOTICE OF APPEAL was denied, and his right to a FIRST APPEAL as

guaranteed by the Constitution [was denied]. [He] was due diligent in his attempt to have an

9

attorney file his proper appeal and give him his legal documents so that he would have a clue [about] the status of his appeal.  He was denied both." *Id*., PageID at 290 (capitalization in original).

On April 7, 2009, the Ohio Court of Appeals overruled Pierce's Motion for Delayed Appeal because he had "failed to show good cause that would justify permitting a delayed appeal." *Id*., Exh. 47.  The Ohio Court of Appeals later overruled as untimely Pierce's subsequent Motion for Reconsideration.  *Id*., Exhs. 48, 49.

Pierce next sought review in the Ohio Supreme Court without success.  On September 16, 2009, the Ohio Supreme Court denied Pierce leave to appeal.  *Id*., Exhs. 50, 52.

Thus ended Pierce's pro se attempt to obtain a delayed appeal of his convictions in the Ohio courts.  Yet all was not over in state court; Pierce next attacked his convictions and sentence by returning to the trial court.

### D.     Pierce's *Baker* Motion and Appeal

On March 8, 2010, Pierce filed in the trial court a Motion to Vacate a Void Judgment and Sentence.  He argued that his February 28, 2006 termination was void, rendering his conviction and sentence void under *State v. Baker*, 119 Ohio St.3d 197 (2008).  He further maintained that the February 28, 2006 Termination Entry was not a final appealable order, and he asked to trial court to issue a valid judgment of conviction and sentence under Ohio R. Crim. P. 32(C).  (Doc. #11, Exh. 53).

In *State v. Baker*, the Ohio Supreme Court discussed Rule 32(C) of the Ohio Rules of

10

Criminal Procedure and held:

> A judgment of conviction is a final appealable order under [Ohio] R.C. 2502.02 when it sets forth (1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of court.

119 Ohio St.3d 197, syllabus.

The trial court agreed with Pierce, at least in part, and issued a new termination entry on March 26, 2010 – "nunc pro tunc 2/28/2006." *Id*., Exh. 54.  Respondent notes that the March 26, 2010 termination entry conformed with *State v. Baker* and sentenced Pierce to the exact same total term of imprisonment – 51 years to life.  (Doc. #11, PageID at 46-47; *see* Exh. 54).

Nearly six months later, on September 24, 2010, Pierce filed a Notice and a Motion for Delayed Appeal.  (Doc. #11, Exh. 55).  Although the prosecution filed a memorandum contra, the Ohio Court of Appeals sustained Pierce's motion and appointed an attorney to represent him.  Briefing then commenced.  *Id*., Exhs. 56-61.

On December 13, 2011, the Ohio Court of Appeals issued a decision holding that the termination entry on March 26, 2010, which was issued nunc pro tunc to February 28, 2006, corrected a clerical omission in the original judgment of conviction.  This meant that the March 26, 2010 termination entry did not constitute a new final appealable order from which Pierce could obtain a new appeal.  Consequently, the Ohio Court of Appeals dismissed Pierce's appeal "for lack of a final appealable order."  (Doc. #11, Exh. 62, PageID at 545).

The state-court record submitted in this case contains no information about whether

Pierce sought further review in the Ohio Supreme Court.

### E.     Grand Jury Testimony

Pierce, at some point, also returned to the trial court with a Motion for Production of Grand Jury Testimony.  The trial court overruled Pierce's Motion in a written decision on April 17, 2012.  (Doc. #11, Exhs. 63-68).  The trial court concluded that Pierce "failed to demonstrate a particularized need for the grand jury testimony."  *Id*., Exh. 68, PageID at 627.

Pierce filed a Notice of Appeal in May 2012, and his appeal remains pending.  *Id*., Exh. 69.

### III.   Pierce's Federal Habeas Corpus Petition

Pierce signed his federal habeas petition and certificate of service on April 1, 2010. (Doc. #1, PageID at 11, 14).  Although a week went by before his petition arrived in the Clerk's office and was docketed, the earliest possible date he could have placed it in the prison mail system was the date he signed it, April 1, 2010.  Consequently, giving Pierce the benefit of doubt about when he submitted his petition for mailing, the date he filed his petition is deemed to be April 1, 2010.  *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012) (applying the prison mailbox rule to a federal habeas petition).

His pro se Petition raises three grounds for relief:

Ground One:         Motion for new trial based on newly discovered evidence.  A witness that was not available for trial would [have] testified that i[t] was not the appellant at the scene of the crime.  This did match the testimony of witness Kristene Bruns, along with other testimony, and would [have] convinced the jury of the appellant's innocence.

Ground Two:        Untimely notice of appeal from the 28 February, 2006 Judgment Entry.

Ground Three:      Motion for delayed appeal.  The appellant hired a[n] attorney to appeal the constitutional violations of his appointed appellate attorneys.  The hired appellate attorney, Clyde Bennett III, after accepting the case was sent to federal prison without filing any documents.

(Doc. #1 at PageID at 5-8).  Pierce asserts in his Traverse:

> [He] has been denied his right to effective assistance of trial counsel, effective assistance of appellate counsel and his due process rights.  A criminal defendant is entitled to the effective assistance of counsel at all critical stages of the proceedings.  *Gideon v. Wainwright* (1963) 371 U.S. 334.  This includes proper and timely notice of appeal.  *Strickland v. Washington...,*; *Blackburn v. Folz* (CA6, 1987) 828 F.2d 1177.

(Doc. #13, PageID at 636).  Pierce also explains in his Traverse that if this Court grants a writ of habeas corpus and directs the Ohio courts to provide him with a new appeal, he would raise three assignments of error in the Ohio Court of Appeals: (1) prosecutorial misconduct; (2) "false identification:..."; and (3) "New Trial Motion Against the Manifest Weight of Evidence:..."  (Doc. #13, PageID at 637-38).


## IV.   Pierce's Habeas Petition is Time Barred

### A.  The AEDPA's Statute of Limitations

Respondent contends that a one-year statute of limitations bars Pierce's habeas petition.

Pierce filed the instant case in 2010.  As a result, the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA) – which took effect on April 24, 1996 – applies.  *Hinkle v. Randle*, 271 F.3d 239, 246 (6th Cir. 2001).

The AEDPA placed a one-year statute of limitations on federal habeas corpus

petitions.  *See* 28 U.S.C. §2244(d)(1).  The one-year limitation period begins to run from the

latest of several possible circumstances:

>    (A)  the date on which the judgment became final by the conclusion of direct
>    review or the expiration of the time for seeking such review...;
>
>    (B)...;
>
>    (C)...;  or
>
>    (D) the date on which the factual predicate of the claim or claims presented
>    could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).[2]

In general, a habeas petitioner's claims are examined separately to determine if any are

barred by the AEDPA's statute of limitations.  *See Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir.

2007) ("We must examine Ege's two habeas claims separately with regard to the State's

argument and the section 2244(d)(1) bar.").

**B.      Section 2244(d)(1)(A):**
       **<u>Conclusion of Direct Review, Etc.</u>**

**1.**

To the extent Pierce's habeas petition raises claims connected to his trial and

convictions, he knew or should have known about such claims during the pendency of his

initial attempt to directly appeal his convictions in state court.  Because of this,

---

[2]  The circumstances described in §§2244(A)(1)(B) and (C) do not exist in this case.

§2244(d)(1)(A) controls when such claims became final.  *See Keeling*, 673 F.3d at 460

("Because Keeling was aware of the factual predicate of those claims at the time of his direct

appeal..., the one-year statute of limitations began to run on the date that his judgment became

final, at the expiration of the time for seeking direct review.").

> The Supreme Court recently addressed §2244(d)(1)(A):

>> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs.  Each prong — the "conclusion of direct review" and the "expiration of the time for seeking such review" — relates to a distinct category of petitioners.  For petitioners who pursue direct review all the way to th[e] [Supreme] Court, the judgment becomes final at the "conclusion of direct review" — when this Court affirms a conviction on the merits or denies a petition for certiorari.  For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review" — when the time for pursuing direct review in this [the Supreme] Court, or in state court, expires.

*Gonzalez v. Thaler*, __U.S.__, 132 S.Ct. 641, 653-54 (2012)(brackets added).

> Pierce did not pursue his direct appeal all the way to the U.S. Supreme Court.

Consequently, under §2244(d)(1)(A), he falls into *Gonzalez*'s second category of habeas

petitioners – those whose judgment of conviction became final at the "expiration of the time

for seeking such review."  Because Pierce attempted to directly appeal his convictions first in

the Ohio Court of Appeals, then in the Ohio Supreme Court, his claims did not become final

until "the time for pursuing direct review" in the U.S. Supreme Court expired.  *See Gonzalez*,

__U.S. at __, 132 S.Ct. at 653-54.

> The Ohio Supreme Court dismissed Pierce's direct appeal on October 4, 2006.  This

was the date on which Pierce's attempted direct appeal ended in state court.  His convictions

did not become final under §2244(d)(1)(A) for another 90 days, until January 2, 2007, because he is entitled to count the 90-day period during which he could have filed a petition for certiorari in the U.S. Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *see also Sherwood v. Prelesnik*, 579 F.3d 581, 585 (6th Cir. 2009); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). As a result, the AEDPA's statute of limitations began to run for Pierce's claims – those related to his trial and convictions – on January 3, 2007.

## 2.

Respondent disagrees. Respondent contends that Pierce's convictions became final much earlier – on March 30, 2006 – 30 days after the trial court issued its termination entry on February 28, 2006.

Rule 4(A) of the Ohio Rules of Appellate Procedure sets a 30-day deadline for filing a notice of appeal from "the later of entry of the judgment or order appealed...." Pierce's trial counsel did not file a notice of appeal until April 11, 2006.

Based on Rule 4(A), Respondent reasons that Pierce's "time for pursuing direct review" expired in the Ohio courts on March 30, 2006; his convictions became final on that date under 28 U.S.C. §2244(d)(1)(A); the AEDPA's one-year statute of limitation began running the next day; therefore Pierce had until March 30, 2007 to file his federal habeas petition. Respondent thus concludes that Pierce's habeas petition, filed on April 1, 2010, was untimely.

Respondent, however, overlooks that Pierce's direct appeal of the termination entry, although found untimely by the Ohio Court of Appeals (on May 30, 2006), did not end in the

16

state courts until the Ohio Supreme Court denied his direct appeal on October 4, 2006.  Until then, the state courts had not put to rest the issue of whether Pierce had timely filed his notice of appeal concerning the February 28, 2006 termination entry.  The timeliness issue, moreover, was not straightforward.

As just noted, Pierce had 30 days to file a notice of appeal concerning the February 28, 2006 termination entry.  Simple enough.  Yet his counsel did not file the notice of appeal until April 11, 2006, thinking that his motion for new trial delayed the starting of the 30-day period for filing a notice of appeal.  (Doc. #11, Exh. 31).  His thinking was based on Rule 4(B)(3) of the Ohio Rules of Appellate Procedure.  (Doc. #11, Exh. 31).  And it is the interplay of Rules 4(B)(3) and 4(A) of the Ohio Rules of Appellate Procedure and Rule 33 of the Ohio Rules of Criminal Procedure that led to the parties' dispute in the Ohio Court of Appeals over whether Pierce's notice of appeal was timely.  *See* Doc. #11, Exhs. 31-33.  Finding Pierce's notice of appeal to be untimely, the Ohio Court of Appeals first explained the interplay of these Rules as follows:

> Appellate Rule 4(B)(3) states, in part, that "if a party timely files a motion for arrest of judgment or new trial ... the time for filing a notice of appeal [under Rule 4(A)] begins to run when the order denying relief is entered."  The rule further states that "[a] motion for new trial on the ground of newly discovered evidence *made within the time for filing a motion for new trial on other grounds* extends the time for filing a notice of appeal from a judgment of conviction in the same manner as a motion on other grounds.  If made after the expiration of the time for filing a motion on other grounds, the *motion on the ground of newly discovered evidence does not extend the time for filing a notice of appeal.*"  (Emphasis added).  Criminal Rule 33 states, in part, that "[a]pplication for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered....  Motions for new trial on account of newly discovered

17

> evidence shall be filed within one hundred twenty days after the day upon
> which the verdict was rendered...."

(Doc. #11, Exh. 34, PageID 205-06).  With these Rules in mind, the Ohio Court of Appeals

reasoned, "The time for filing a timely notice of appeal from the February 28, 2006

termination entry began to run immediately because the motion for new trial was not filed

within fourteen days of the verdict."  (Doc. #11, Exh. 34, PageID at 206).  And this meant that

Pierce's notice of appeal filed on April 11, 2006 was untimely.  *Id.*

After the Ohio Court of Appeals reached that conclusion, Pierce's direct appeal

continued when his appellate counsel sought further review in the Ohio Supreme Court.  And,

again, that Court dismissed his notice of appeal on October 4, 2006.  This was the date on

which Pierce's attempt to directly appeal his convictions and sentence ended in the Ohio

courts.  As explained above, *supra*, §IV(B), the time for Pierce to seek direct review in the

U.S. Supreme Court ended 90 days later and, as a result, the AEDPA's statute of limitations

began to run under §2244(d)(1)(A) on January 3, 2007.

Respondent's argument that Pierce's conviction became final on March 30, 2006

ignores the reality that he argued for the timeliness of his notice of appeal in both the Ohio

Court of Appeals and the Ohio Supreme Court.  The rejection of his argument was not

conclusive in the state courts until the Ohio Supreme Court dismissed his appeal on October

4, 2006.  Until then, neither Pierce nor the prosecution knew with final certainty that his

notice of appeal was untimely.  And it was only on October 4, 2006 that his time for seeking

direct review of his convictions expired in the Ohio courts.

Respondent's three cases – *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987);

*Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir. 2002); and *Lucas v. Carter*, 46 F.Supp.2d

709 (N.D. Ohio 1999) – do not convince otherwise as each case involved circumstances

distinct from those presented here.  Each case is also silent on the issue presented here:

whether a petitioner's conviction is final, thus starting the AEDPA's statute of limitations

under §2244(d)(1)(A), when the time (here, 30 days) expires for filing a notice of appeal in

the state court of appeals, even though the parties litigated the timeliness issue on the

petitioner's direct appeal in both the state court of appeals and the state supreme court.  The

answer is no, in the present case.  Pierce's claims related to his trial or convictions did not end

in the Ohio courts until the Ohio Supreme Court dismissed his direct appeal.  Ninety days

later – January 2, 2003 – his time expired for seeking review in the U.S. Supreme Court.  The

AEDPA's statute of limitations began to run on his claims concerning his trial or convictions,

under §2244(d)(1)(A), the next day – on January 3, 2007.  *See Keeling*, 673 F.3d at 460

(excluding the date on which conviction became final to compute statute of limitations).

### 3.

Pierce did not take further action in the Ohio courts until he filed his pro se motion for

leave to file delayed appeal on March 12, 2009.  This was after the AEDPA's one-year

limitation period expired.  His motion was denied and did not restart the AEDPA's already

expired limitations period.  *See Keeling*, 673 F.3d at 439 ("'the *possibility* that a state court

may reopen direct review does not render convictions and sentences that are no longer subject

to direct review nonfinal." (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 120 n.4

(2009)(other citation omitted)); *see also DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006).

Still focusing on Pierce's claims in this case related to his trial and convictions, using January 2, 2007 (rather than Respondent's date of March 30, 2006) as the date his claims became final does not assist Pierce.  One year later, on January 2, 2008, the statute of limitations expired.  Pierce did not file his federal habeas petition until April 1, 2010, making it untimely unless some other AEDPA provision rescues his claims related to his trial and convictions.

One possibility arises: tolling.

C.    Section 2244(d)(2):  Tolling

1.

The AEDPA's statute of limitations is tolled – stops running – for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2).

Respondent correctly acknowledges that Pierce's motion for a new trial was properly filed in state court and tolled, under §2244(d)(2), the AEDPA's one-year limitations period from February 28, 2006 until his direct appeal ended as to the denial of his motion for a new trial.  *See* Doc. #11, PageID at 52.  Pierce's motion for new trial remained pending in the Ohio Court of Appeals until its decision on April 13, 2007.  On that date, the Ohio Court of Appeals concluded that Pierce's motion for new trial lacked merit and that his other challenge to the manifest weight of the evidence lacked merit.  *Id*., Exh. 40.

Pierce then had 45 days to file a notice of appeal, which he did not do. *See* Ohio S.Ct. Prac. R. 2.2(A)(1)(a). When the 45 days ended on May 28, 2007, Pierce no longer had a properly filed motion for collateral review pending in the Ohio courts, and the AEDPA's statute of limitations began to run the next day. *See Keeling*, 673 F.3d at 460.

Giving Pierce the benefit of tolling, as §2244(d)(2) allows, does not rescue him from his statute of limitations problem. Tolling lasted at most until May 28, 2007. The AEDPA's limitation period began to run the next day and expired one year later on May 27, 2008.[3] And, again, Pierce did not file his present federal habeas petition until April 1, 2010, well past the one-year limitation deadline.

**2.**

Pierce's remaining activities in the Ohio courts likewise failed to restart the already expired AEDPA statute of limitations for the claims he raises in his habeas petition concerning his trial or convictions. This includes his Motion to Vacate a Void Judgment and Sentence based on *State v. Baker*, 119 Ohio St.3d 197 (2008) as well as his Motion for Production of Grand Jury Testimony. Neither of those motions constituted "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2).

---

[3] February 2008, occurring in a leap year, had 29 calendar days. Consequently, 365 days lapsed on May 27, 2008.

21

**D.      Section 2244(d)(1)(D):  Pierce's Claims
         of Ineffective Assistance of Appellate Counsel**

**1.**

Construing Pierce's habeas petition and his pro se traverse in his favor, his second and

third grounds for relief assert three claims of ineffective assistance of appellate counsel.  *See*

Doc. #1, PageID at 6-9; Doc. # 13, PageID at 634-37.  Pierce could not have known about

these claims at the time of his trial and convictions because they rest on post-trial acts or

omissions by his counsel.  The first concerns his trial/appellate counsel's failure to timely file

a notice of direct appeal.  The second concerns his new appellate counsel's, attorney Shaw's,

representation of Pierce on his direct appeal in the Ohio Court of Appeals and the Ohio

Supreme Court.  And the third concerns attorney Bennett's failure to take any post-trial action

on Pierce's behalf in the Ohio courts.

Because the factual predicate of each of these claims arose after Pierce's trial and

convictions, §2244(d)(1)(D) might permit Pierce to use a later date as the start of the statute of

limitations for his claims of ineffective assistance appellate counsel.  *See Ege*, 485 F.3d at

373.  As quoted previously, *supra*, §IV(A), §2244(d)(1)(D) provides that the AEDPA

limitations period begins to run, "the date on which the factual predicate of the claim or claims

presented could have been discovered through the exercise of due diligence."

**2.**

Pierce does not identify the exact date when he first learned about his counsel failure to

file a timely notice of appeal.  Yet he either knew about this failure, or would have discovered

it through due diligence, on May 30, 2006 when Ohio Court of Appeals issued its decision on Pierce's direct appeal, if not earlier when the prosecution raised the issue in the motion to dismiss it filed in the Ohio Court of Appeals or when new appellate counsel Shaw opposed the issue. *See* Doc. #11, Exhs. 32-34. Accepting any of these dates under §2244(d)(1)(D), the AEDPA's limitation period began to run the next day, and Pierce raised this claim in the present case well over 1 year later when he filed his habeas petition on April 1, 2010. Consequently, Pierce's ineffective assistance of counsel claim based on his trial/appellate counsel's failure to file a timely notice of appeal is time barred.

Pierce's second ineffective assistance claim – challenging attorney Shaw's representation of him on direct appeal and during the appellate proceedings concerning the denial of his motion for a new trial – suffers from similar tardiness. Pierce knew about the factual predicate of this claim, or would have known about it through due diligence, at the latest when the Ohio Court of Appeals rejected his motion for new trial on April 13, 2007. (Doc. #11, Exh. 40). The AEDPA's limitation period began to run the next day under §2244(d)(1)(D), and Pierce raised this claim in the present case well over 1 year later when he filed his habeas petition on April 1, 2010. Consequently, Pierce's claims of ineffective assistance of appellate counsel claim based on attorney Shaw's representation is time barred.

## 3.

Turning to Pierce's challenge to attorney Bennett's omissions, Pierce does not identify the date when he first learned about attorney Bennett's legal troubles or about any fact giving rise to his claim of ineffective assistance by Bennett. Assuming Pierce hired attorney Bennett

23

to file a motion for delayed appeal in the Ohio Court of Appeals, Pierce knew by March 12, 2009 – at the latest – that Bennett had not done so.  This much is certain because on March 12, 2009, Pierce filed a pro se motion for delayed appeal in the Ohio Court of Appeals discussing attorney Bennett's circumstances.  (Doc. #11, Exh. 44).  Accepting (in Pierce's favor) this date does not assist him under §2244(d)(1)(D) because he did not file his present habeas petition until April 1, 2010, more than one year after March 12, 2009, the latest possible date on which he discovered attorney Bennett's omissions.

Pierce might alternatively attempt to avoid his time problem by relying on §2244(d)(1)(A) and pointing to "the expiration of the time for seeking ... review" in the Ohio courts of his motion for delayed appeal.  A first glance in §2244(d)(1)(A)'s direction would appear promising for Pierce because the Ohio Court of Appeals denied his motion for delayed appeal on April 7, 2009, and he filed his habeas petition less than one year later on April 1, 2010.  But this calculation does not work for Pierce.  It crashes into the fact that the Ohio Court of Appeals never re-opened his direct appeal – i.e., it denied his motion for leave for delayed appeal.  "[U]nder section 2244(d)(1)(a)..., '...the *possibility* that a state court may reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal.'"  *Keeling*, 673 F.3d at 459 (emphasis in *Keeling*) (quoting, in part, *Jimenez*, 555 U.S. at 120 n.4, 129 S.Ct. at 686 n.4).

Alternatively, even if Pierce's claim of ineffective assistance by attorney Bennett is timely, Pierce raised this claim in his motion for delayed appeal in Ohio Court of Appeals.  But he did not seek review in the Ohio Supreme Court of the Ohio Court of Appeals' decision

24

to deny his motion for delayed appeal.  As a result, he did not fairly present this claim to the

Ohio Supreme Court, thus committing a procedural default for the purpose of federal habeas

review.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *see also Bonilla v. Hurley*, 370

F.3d 494, 497 (6th Cir. 2004); *Buell v.  Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

Additionally, the record fails to indicate the existence of cause for the procedural default or

prejudice to Pierce sufficient to excuse his default.  *See Bonilla*, 370 F.3d at 497-98.  And,

although he asserts in his habeas petition that he is actually innocent – a potential basis for

negating his procedural default, *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012); *see Burton

v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) (and cases cited therein) – the evidence he relies

on does not establish his actual innocence or raise even a colorable claim of actual innocence.

Pierce argues in his traverse:

> A witness Brian Miller wrote an affidavit stating he s[aw] this crime take
> place and his series of events [corroborates] ... another witness at the scene of
> the crime who testified the petitioner did not fit the description of the man they
> s[aw] commit the crimes petitioner is convicted of....

(Doc. #13, PageID at 638).

Miller's affidavit does little, if anything, to advance Pierce's assertion of actual

innocence.  Even if Miller's affidavit is fully credited, it does not negate the evidence against

him that was presented to the jury.  The Ohio Court of Appeals referred to the evidence

against Pierce when rejecting his motion for new trial:

> [T]he bulk of the eyewitness testimony from the State's witnesses which
> placed Pierce at the crime scene and identified him as the shooter.  Simply put,
> Miller's testimony does not exonerate Pierce.  Rather, it merely identifies an
> African-American male at the scene of the crime whose description does not

25

> match that of Pierce.  Just as the trial court found, such evidence would not
> establish "a strong probability that it will change the result if a new trial is
> granted."

*Supra*, §II(B).  Nothing in the present record, including Pierce's reliance on Miller's affidavit,

conflicts with the Ohio Court of Appeals' analysis or conclusion – especially its explanation

that the bulk of the prosecution's witnesses placed Pierce at the crime scene and identified him

as the shooter.  *Id*.  Consequently, this is not the "extraordinary case," *Murray v. Carrier*, 477

U.S. 478, 496 (1986), supporting a claim of actual innocence.


### E.    Equitable Tolling

Pierce argues that the doctrine of equitable tolling applies and overcomes his time

problems.  He contends that he has been pursuing his appellate rights diligently by hiring

attorney Bennett to represent him.  He emphasizes that he "never imagined or could possible

see this (attorney being imprisoned) happening...."  (Doc. #13, PageID at 637).  And Pierce

further "feels he has reliable evidence that refutes that his conviction is lawful, and claims his

'actual innocence.'"  *Id*.

The doctrine of equitable tolling potentially applies to Pierce's statute of limitations

bar.  *See Holland v. Florida*, __U.S.__, __, 130 S.Ct. 2549, 2560-61 (2010); *see also Hall v.*

*Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 749 (6th Cir. 2011).  "Typically, equitable

tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably

arose from circumstances beyond that litigant's control."  *Vroman v. Brigano*, 346 F.3d 598,

604 (6th Cir. 2003).  Courts invoke equitable tolling "sparingly."  *Hall*, 662 F.3d at 749.  And

26

here Pierce bears the burden of establishing that equitable tolling excuses his untimeliness under the ADEA, 28 U.S.C. §2244(d). *See Holland*, 130 S.Ct. at 2562 (petitioner is entitled to equitable tolling "only if he shows...."); *see also Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

Equitable tolling applies "only if two requirements are met. First, the petitioner must establish 'that he has been pursuing his rights diligently.' And second, the petitioner must show that some extraordinary circumstance stood in his way and prevented timely filing." *Hall*, 662 F.3d at 749 (quoting, in part, *Holland*, 130 S.Ct. at 2562).

Pierce did not hire attorney Bennett until approximately January 11, 2007. (Doc. #13, PageID at 644-45). Bennett's legal troubles did not arise until sometime after that. Although attorney Bennett's circumstances and legal problems were beyond Pierce's control, Pierce's time problems as to his non-Bennett related claims in this case concern events that occurred before Bennett's legal troubles came to light. Bennett did not represent Pierce at trial or during his direct appeal. Consequently, Bennett's post-January 2011 legal problems and apparent imprisonment played no role in Pierce's failure to raise his habeas claims related to his trial or direct appeal in a timely manner.

In addition, Bennett sent Pierce a letter on January 11, 2007. Based on the content of this letter, it was reasonable for Pierce to wait awhile before re-contacting Bennett or filing a pro se motion for relief in the Ohio courts. But Pierce waited far too long – more than two years – until March 12, 2009 – to take action by filing his pro se motion for delayed appeal. This was far too long because Bennett informed Pierce in January 2007, "I will be meeting

with you in the near future to discuss the concerns that you have."  (Doc. #13, PageID at 645).

The record contains no indication that Bennett contacted Pierce or that Pierce contacted

Bennett after January 11, 2007.  Although Bennett's legal troubles were unusual, if not an

extraordinary circumstance, Pierce's own inaction for at least some of the time before he filed

his motion for delayed appeal in state court plus nearly one year after his delayed appeal was

rejected by the Ohio Court of Appeals caused the delay in filing his federal habeas petition.

Turning to Pierce's assertion of actual innocence, this assertion presents a possible

basis to equitably toll the AEDPA's statute of limitations.  *See Perkins v. McQuiggin*, 670

F.3d 665, 670-72 (6th Cir. 2012), *cert. granted*, 81 USLW 3074, 2012 WL 3061886 (U.S. Oct.

29, 2012) (No. 12-126).  In the "rare and extraordinary case," a petitioner's actual innocence

may excuse a time-barred claim.  *See id*., 670 F.3d at 676.  This is not such a case, for the

reasons set forth above.  *Supra,* § IV(D)(3).


## V.     CERTIFICATE OF APPEALABILITY

Before Pierce may appeal a denial of his habeas petition, he must first obtain a

certificate of appealability.  28 U.S.C. §2253(c)(1)(A).

To obtain a certificate of appealability, a habeas petitioner must make a substantial

showing of the denial of a constitutional right.  *Id*.; *see Miller-El v. Cockrell*, 537 U.S. 322,

336 (2003).  If a petition is rejected on procedural grounds without reaching the merits of the

petitioner's claims, the petitioner obtains a certificate of appealability by demonstrating that

reasonable jurists would find it debatable whether (1) the petitioner has stated a valid

28

constitutional claim and (2) the District Court was correct in its procedural ruling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For the reasons stated above, *supra*, §IV, reasonable jurists could not debate that Pierce's habeas petition is time barred.  Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.      Respondent's Motion to Dismiss as Time Barred (Doc. #11) be GRANTED;

2.      James Pierce's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED and DISMISSED;

3.      Pierce be denied leave to appeal *in forma pauperis* and the Court CERTIFY under 28 U.S.C. §1915(a)(3) that any appeal Pierce seeks to take from a Decision and Entry adopting this Report and Recommendation is not taken in good faith;

4       Pierce be denied a certificate of appealability under 28 U.S.C. §2253(c); and

5.      This case be terminated on the docket of this Court.


November 14, 2012

                          s/Sharon L. Ovington
                          Sharon L. Ovington
                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).